# West Publishing Company v.
# The Harrisburg National Bank
# and Trust Company

*J. Edward Pawlick,* for plaintiff.

*Ralph W. Boyles, Jr., Nauman, Smith, Shissler & Hall,* for defendant.

LIPSITT, J., September 2, 1969.—Before the court is a motion for judgment on the pleadings filed by defendant, The Harrisburg National Bank and Trust Company. The complaint in trespass commenced by West Publishing Company alleges that in October of 1962 certain law books were sold to Frank S. Seiders, Jr., under an installment sale arrangement, and in

May of 1963 additional law books were sold to the same party with arrangements for installment payments. Subsequently, in March of 1966, West avers it recorded financing statements under article 9 of the Uniform Commercial Code of April 6, 1953, P. L. 3, as amended, in the office of the Prothonotary of Dauphin County and the office of the Secretary of the Commonwealth. Further, it is alleged defendant took possession of the books without notice to plaintiff and sold the same in August of 1966. Because at the latter time Mr. Seiders was in default under his agreement to pay, West asserts it was entitled to the possession of the books.

An essential point in West's cause is founded upon the averment that defendant, being the landlord of the building in which Mr. Seiders' office was located, took possession of the books for the nonpayment of rent but failed to follow the statutory requirements of The Landlord and Tenant Act of April 6, 1951, P. L. 69, 68 PS §250.101, et seq., and thus its distraint and sale resulted in defendant being a trespasser, resorting to self help without the benefit of proper established legal procedures. In stating the value of the books, West refers to the action of defendant as a conversion and demands the sum of the unpaid balance owed by Mr. Seiders to West in the amount of $2,198.10 with interest.

Attached to the complaint are two similar instruments. One is dated October 17, 1962, signed by Frank S. Seiders, Jr., bearing his address by which shipment of certain law books is requested and at the bottom thereof is a printed statement which refers to the instrument as a contract and states it is subject to approval by West who retains title to the books until paid. The second is an identical form dated May 3, 1963, on which additional books are listed.

The answer of defendant denied that any financing statements were completed because the requirements of article 9 of the Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 9-402, as amended, 12 PS §9-402, were not complied with inasmuch as the papers filed by West did not conform to the requirements of said code and, therefore, West had no security interest in the said books. Under the heading of new matter, defendant averred that neither the prothonotary nor the Secretary of the Commonwealth received financing statements for filing signed by the debtor and the secured party as required by the Uniform Commercial Code.

More specifically defendant avers that on March 28, 1966, in the office of the Secretary of the Commonwealth two financing statement forms were filed bearing the signatures of the secured party only and its address and attached to each of these papers were the instruments previously referred to bearing the signature of the debtor only dated October 17, 1962, and May 3, 1963, respectively. Defendant acknowledges that the set of papers signed by a West agent were financing statement forms but claims a security interest was not perfected because they were signed only by the secured party alone and at the place prepared for the signature of the debtor appears the notation "see attached security agreement." Defendant also makes a further objection to the validity of the financing statements because photocopies of the papers filed with the Secretary of the Commonwealth were then filed with the Prothonotary of Dauphin County which copies bore no original signatures although each was certified by the Secretary of the Commonwealth.

The answer contains the additional defense that defendant did not secure possession of the books by

virtue of the landlord's distraint but rather received the books together with office furniture of Mr. Seiders as a bona fide purchaser by virtue of a bill of sale given by Mr. Seiders to defendant on July 25, 1966, in consideration of defendant's cancellation of its claim for rent due and owing by Mr. Seiders to defendant in the amount of $800. A copy of the bill of sale is attached to defendant's answer. Defendant, therefore, answers that it was not required to follow the statutory procedures of The Landlord and Tenant Act of 1951 and was guilty of no conversion. Hence, defendant asserts that if plaintiff created perfected security interests, no action by defendant disturbed or interfered with plaintiff's right and its recourse is to pursue the security and seize the books rather than try to seek redress from defendant.

West replied to defendant's new matter, supplying copies of the instruments upon which the action is predicated. In its reply, it admits that the the various papers as mentioned by defendant were filed but disputes the conclusion drawn by defendant that the papers do not constitute valid and effective financing statements. West further admits that the documents filed with the prothonotary were photocopies of the papers which it filed as financing statements in the office of the Secretary of the Commonwealth and certified by the said secretary. West denied that defendant was a bona fide purchaser, giving valuable consideration for the books, and further denied that the action of the landlord has not disturbed or interfered with its rights. The reply repeated the assertion that defendant secured possession of the books by distraint and having failed to follow the proper statutory procedures, the illegal acquisition and subsequent sale of the books constituted a conversion of West's property.

Thereafter, defendant presented its motion for judgment on the pleadings, contending that the is-

sues had been framed with respect to the legal suffi-
ciency of the purported financing statements and,
consequently, the effect of filing.

The primary question is whether the documents
relied upon by West to establish a perfected security
interest are sufficient as a matter of law to constitute
a "financing statement."

Defendant urges that the documents failed to meet
the minimal and fundamental requirements of section
9-402 of the Uniform Commercial Code, supra, as
amended, by the Act of October 2, 1959, P. L. 1023,
sec. 9, 12A PS §9-402, of the Uniform Commercial
Code, which provides:

"A financing statement is sufficient if it is signed
by the debtor and the secured party, gives an ad-
dress of the secured party from which information
concerning the security interest may be obtained,
gives a mailing address of the debtor and contains
a statement indicating the types, or describing the
items, of collateral."

It is argued that only the secured party signed the
financing statement forms, and the sheets attached
with the signature of the debtor are described as pur-
chase orders or shipping orders.

Section 9-301(1) of the Uniform Commercial Code
provides, in pertinent part:

". . . an unperfected security interest is subordi-
nate to the rights of . . . (c) in the case of goods. . .,
a person who is not a secured party and who is a . . .
buyer not in ordinary course of business to the extent
that he gives value and receives delivery of the co-
lateral without knowledge of the security interest and
before it is perfected."

Thus, defendant claims that in the absence of a
perfected security interest, West's rights are sub-
ordinate to defendant's.

West counters defendant's argument by claiming
the documents involved satisfied all the requirements

of section 9-402 of the code. It first points out that in the instruments signed by Mr. Seiders it was stated that the seller "retains title to said books until paid." Therefore, plaintiff says there was a security interest retained by the seller and the instrument is a security agreement. It is contended further that these security agreements are per se satisfactory financing statements for one instrument has been signed by the salesman along the side and on the other instrument as a witness and along the side. Additionally, it is urged that West has completed valid financing statements signed by an authorized party for West which refer to an attached security agreement, these being the instruments signed by Frank S. Seiders, Jr. Plaintiff reasons it should not be thrown out of court if all the information required by the code is contained on two pieces of paper rather than one.

Before reaching any decision, the second premise of defendant should also be examined. Even if the debtor's signatures on those instruments filed with the Secretary of the Commonwealth were "on" the financing statement form, it is then argued by defendant that the filing with the Prothonotary of Dauphin County was defective as to all the documents, since the signatures, like the papers themselves, are mere photocopies and are not authenticated by the parties.

West, of course, argues that the documents filed with the Prothonotary of Dauphin County meet the requirements of section 9-402 of the Uniform Commercial Code, supra, which reads "A copy of the security agreement is sufficient as a financing statement if it contains the . . . information and is signed by both parties." West stresses that where two filings are required and, as was done here, the Secretary of the Commonwealth makes a certification, all the objectives of. the legislation have been achieved; and it notes the statute does not say the signatures must be originals.

Defendant cites an opinion by a referee in bankruptcy, In Re: Kane, Bankrupt, reported in 55 Berks 1 (1962), wherein a creditor had filed an undisputed financing statement with the Secretary of the Commonwealth, but had filed only a photocopy of the financing statement with the county prothonotary. The referee stated, at page 5:

"As I construe the Code however, the provision 'signed by the debtor and secured party' appearing in Section 9-402 of the Code means an actual signature manually produced by a writing instrument in the hand of the signer in direct contact with the document being executed. Photocopies of signatures appearing on other documents do not meet this test. Where, as here, a statute undertakes to set forth the formal requisites of a financing statement and expressly states that such a statement is sufficient 'if it is signed,' I can only conclude that when it is not signed, it is not sufficient. As a consequence the filing of photo-copies of a financing statement in Berks County was a nullity—without legal significance. The signatures of the debtors on the attached list of collateral did not cure the defect."

Although the opinion of a referee in bankruptcy is entitled to respect, it must be observed that no Pennsylvania court cases are cited which have dealt with the problem, and in the Berks County situation, there was no authentication by the Secretary of the Commonwealth.

West basically urges that the intent of the law as it relates to financing statements is to do away with technicalities that inhibit business or insist on form at the expense of substance. The concept under modern uniform codes probably leans to the thinking that a court should not concern itself with minor errors which are not seriously misleading. However, if everything contended by defendant is accepted, it

would be difficult to regard mandatory requirements of a statute as of a minor nature.

The obstacle to a determination favorable to defendant lies principally in being able to find under Pa. R. C. P. 1034, which deals with a motion for judgment on the pleadings, that defendant's position is clear and there are no issues of fact. It is true that, as pleaded, there is little factual disagreement. Nevertheless, some essentials are missing and certain of the facts are of such a nature as to be interpreted differently.

Defendant asserts repeatedly that the papers signed by the debtor were purchase orders or shipping orders signed in 1962 and 1963 and the financing statement forms signed by plaintiff were filed in 1966, and thus it is argued there was no intention by the parties to create a security interest. Particularly, defendant maintains there must be intent on the part of the debtor to execute a financing statement to be filed in order to perfect a security interest within the meaning of the code. Plaintiff says the papers signed by the debtor were security agreements and not purchase or shipping orders. But the intention of the parties cannot be established by the pleadings. The record here is silent as to when the financing statement forms were executed by West. The code does not answer whether or not a security agreement or a financing statement must be signed by both parties at the same time. Nor does the code provide when the financing statement is required to be filed.

The troublesome aspects of photocopies of documents, authenticated by the Secretary of the Commonwealth, have already been discussed.

Another entanglement is the question whether defendant is a bona fide purchaser for value pursuant to section 9-301(1)(c) of the code. Apparently defendant acknowledges the procedure it followed un-

der The Landlord and Tenant Act was inadequate. The definition of value in section 9-108 of the code has been deleted by the amendments but, in any event, plaintiff claims "value" was not given in the instant case. The questions of conversion and limiting the right of plaintiff to pursue the collateral may depend upon resolving whether defendant is a bona fide purchaser for value and whether the instruments signed by the debtor are security agreements even if a financing statement was not perfected. Apropos is the factual situation in The National-Dime Bank of Shamokin v. Cleveland Brothers Equipment Co., Inc., 20 D. & C. 2d 511, 74 Dauph. 194 (1959), where this court considered the sufficiency of security agreements signed by the debtor but not by the secured party. The court noted, at page 515, "a security agreement, as distinguished from a financing statement, is not invalid because it is signed only by the debtor and not by the creditor or lending party."

In view of this discussion and the reasons set forth, we enter the following

## ORDER

And now, September 2, 1969, the motion for judgment on the pleadings is dismissed.